# IN THE 11TH JUDICIAL CIRCUIT COURT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division: LUCY D RAUCH | Case Number: 1011-CV07481 |
| Plaintiff/Petitioner: JAMES STALEY vs. | Plaintiff's/Petitioner's Attorney/Address JENNIFER ANN COKE P O BOX 771009 SAINT LOUIS, MO 63177 |
| Defendant/Respondent: KOZENY & MCCUBBIN LC | Court Address: 300 N 2nd SAINT CHARLES, MO 63301 |
| Nature of Suit: CC Quiet Title | (Date File Stamp) |

FILED SEP 01 2010 JUDY ZERR CIRCUIT CLERK ST. CHARLES CO.

## Summons in Civil Case

**The State of Missouri to:** KOZENY & MCCUBBIN LC

Alias:

GARY MCCUBBIN
12400 OLIVE BLVD STE 555
SAINT LOUIS, MO 63141

AUG 26 2010

COURT SEAL OF ST. CHARLES COUNTY

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**August 6, 2010**
Date

Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to ______ (name) ______ (title).

☐ other ______

Served at ______ (address)

in ______ (County/City of St. Louis), MO, on ______ (date) at ______ (time).

I hereby certify that on the AUG 30 2010 day of 20__, in St. Louis County, I served a copy of the within on the defendant named by delivering a copy to Ron Evans
____ an officer, partner, or managing or general agent; or
__X__ a person having charge of a business office of the defendant; or
____ the registered agent of the defendant

Printed Name of Sheriff or Server: Jim Buckles, Sheriff, St. Louis County — by: ______ Deputy Sheriff — Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on ______ (date).

(Seal)

My commission expires: ______ Date ______ (Notary Public)

| **Sheriff's Fees** | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ ( ______ miles @ $. ______ per mile) |
| **Total** | $ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

AUG 27 2010 10-SMCC-12633

EXHIBIT A

IN THE 11th JUDICIAL CIRCUIT COURT OF THE COUNTY OF ST. CHARLES
STATE OF MISSOURI

**JAMES STALEY,**
and,
**CHERYL STALEY,**
Plaintiffs,

v.

**KOZENY & McCUBBIN, L.C.,**
Serve at:
12400 Olive Blvd., Suite 555
St. Louis, MO 63141

**AMERICA'S SERVICING COMPANY**
Serve at:
1 HOME CAMPUS
DES MOINES IA 50328-0001

**DEUTSCHE BANK NATIONAL TRUST COMPANY,** AS TRUSTEE for MORGAN STANLEY ABS CAPITAL I. INC. TRUST 2006-HE4,
Serve at:
ATTN: LEGAL
60 WALL ST.
NEW YORK, NY 10005
Defendants.

Case No. 1011-CV07481
Div.

FILED
AUG 05 2010
Circuit Clerk
ST. CHARLES COUNTY

PETITION FOR WRONGFUL FORECLOSURE, QUIET TITLE, AND VIOLATIONS OF THE FDCPA

Come now Plaintiffs, James Staley and Cheryl Staley, by and through their undersigned attorney, and for their cause of action for Wrongful Foreclosure, Quiet Title and Violations of the FDCPA state as follows:

1. Plaintiffs are residents of the County of St. Charles, Missouri.

2. Defendant Kozeny & McCubbin, L.C., (K & M) is a law firm conducting business in the Counties of St. Louis and St. Charles County, Missouri.

3. Upon information and belief, Defendant America's Servicing Company ("ASC") is a fictitious name used by Wells Fargo Home Mortgage, with its principal place of business in Des Moines, Iowa.

4. Defendant Deutsche Bank National Trust Company, As Trustee for Morgan Stanley ABS Capital I. Inc. Trust 2006-HE4 ("Deutsche Bank") is a foreign corporation with its United States principal place of business in the State of New York, and doing business in the State of Missouri.

5. On or about January 31, 2006, Plaintiffs purchased the property located at 33 Maple Creek Court, Wentzville, Missouri, 63385 (the "Property") more particularly described in General Warranty Deed to Plaintiffs attached hereto as "Exhibit 1".

6. The Property is located in the County of St. Charles, Missouri, making venue in this Court proper.

COUNT ONE
WRONGFUL FORECLOSURE

7. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 6 as hereinabove stated.

8. Plaintiffs entered into a Promissory Note dated January 30, 2006, with Intervale Mortgage Corporation (the "Note" a copy of which is attached hereto as "Exhibit 2").

9. Defendants have no right or interest in or to the Promissory Note.

10. The Note is secured by a Deed of Trust on the Property (the "Deed of Trust" a copy of which is attached hereto as "Exhibit 3").

11. On or about April 30, 2010, a document entitled "Assignment of Deed of Trust" was filed with the St. Charles County Recorder of Deeds, whereby Mortgage Electronic

Registration Systems, Inc. (MERS) purported to "assign and transfer to Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I. Inc. Trust 2006-HE4...all its right, title and interest in and to a certain Mortgage executed by James E. Staley and Cheryl L. Staley" (the "Assignment", a copy of which is attached hereto as "Exhibit 4").

12. The Assignment was prepared by K & M.

13. The Assignment is dated April 29, 2010, and is executed by Sara Knittel, purported "Assistant Secretary" for MERS.

14. The Assignment is null and void and transfers no interest in the Deed of Trust (i.e. Mortgage) executed by Plaintiffs, as MERS had no interest in the Note.

15. Alternatively, if the Assignment is a valid transfer of the Deed of Trust, the Deed of Trust has thus been separated from the Note, and is now without force and effect, and the Note is thus unsecured.

16. The trustee named in the Deed of Trust is James H. McLarney.

17. Pursuant to the terms of the Deed of Trust, paragraph 24, "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded." (emphasis added).

18. On or about July 16, 2009, Wells Fargo Bank, NA ("Wells Fargo") as purported "attorney in fact" for Deutsche Bank, by and through Xee Moua, purported "Vice President of Loan Documentation" for Wells Fargo filed an Appointment of Successor Trustee with the St. Charles County Recorder of Deeds, purporting to name K & M as successor trustee to the Deed of Trust (the "Appointment" a copy of which is attached hereto as "Exhibit 5").

19. The Appointment was prepared by K & M.

20. Upon information and belief, the signatures of both Xee Moua, the assignor, and Amanda Elizabeth Hosenfeld, the notary attesting to the signature of Xee Moua, are not the signatures of the named individuals.

21. Upon information and belief, Xee Moua has no authority to act on behalf of Wells Fargo.

22. Upon information and belief, Wells Fargo has no authority to act on behalf of Deutsche Bank, as Trustee.

23. Additionally, Deutsche Bank had no right to make such appointment, as Deutsche Bank is not the original lender, nor the holder, in due course or otherwise, of the Note, nor a nonholder in possession of the Note who has the rights of a holder, nor a person not in possession of the Note who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d), of the Note.

24. Deutsche Bank is not the beneficiary of the Deed of Trust.

25. On or about the end of June, 2010, K & M sent correspondence to Plaintiffs indicating it had been retained to conduct a Trustee foreclosure sale on July 14, 2010.

26. K & M identified its "client" as ASC.

27. On or about July 14, 2010, K & M purported to conduct a trustee's sale of the Property at the St. Charles County courthouse, and announced "Deutsche Bank" as the highest bidder of such sale.

28. Deutsche Bank was not identified as the highest bidder in its capacity as Trustee, but only as "Deutsche Bank".

29. Upon information and belief, K & M executed a Trustee's Deed to the Property to Deutsche Bank, as Trustee for Morgan Stanley ABS Capital I. Inc. Trust 2006-HE4.

30. The foreclosure of the Property as described herein was and is wrongful and absolutely void, as K & M had no authority to conduct such sale, or to execute such deed, as they were not properly appointed as successor trustee of the Deed of Trust, and Deutsche was not the original lender, nor the holder, in due course or otherwise, of the Note.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendants K & M, ASC, and Deutsche Bank on Count One of their Petition for Wrongful Foreclosure, and set aside the sale and Trustee's Deed executed and filed by Defendant K & M at the instruction or for the benefit of ASC and/or Deutsche Bank, and for such other and further relief as this Court deems just and proper.

COUNT TWO
QUIET TITLE

31. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 30 as hereinabove stated.

32. Upon information and belief, and based upon said Trustee's Deed and sale, Defendant Deutsche Bank is claiming an interest in the Property.

33. Plaintiffs' rights and interest in the Property supercede that of Defendant Deutsche Bank, as Defendant has no right or claim to the Property.

WHEREFORE, Plaintiffs pray this court enter an order in their favor and against Defendant Deutsche Bank on Count Two of their Petition to Quiet Title to ascertain and determine the estate, title and interest of the parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property, and finally determine all rights, claims, interest, liens and demands, whatsoever of the parties concerning or affecting the Property, and award full and complete

relief, whether legal or equitable, to Plaintiffs, and for such other and further relief as this court deems just and proper.

COUNT III
VIOLATIONS OF THE FDCPA

34. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 33 as hereinabove stated.

35. Upon information and belief, ASC is a loan "servicer", and has no right or interest in the Note, or the proceeds from payment thereof.

36. ASC and K & M are "debt collectors" as that term is defined in 15 U.S.C. §§1692a(6)(F).

37. ASC, as a loan servicer, is not exempt from the definition of a debt collector pursuant to 15 U.S.C. §§1692a(6)(F)(iii), as ASC did not obtain the Note or the servicing of the Note prior to the time the debt was in default.

38. Pursuant to 15 USC 1692e, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. Pursuant to 15 USC 1692e(2)(A), the false representation of the character, amount or legal status of any debt is a violation of the FDCPA.

40. Pursuant to 15 USC 1692e(4), the representation or implication that nonpayment of any debt will result in the seizure or attachment or sale of any property of any person is a violation of the FDCPA, unless such action is lawful.

41. Pursuant to 15 USC 1692e(5), the threat to take any action that cannot legally be taken is a violation of the FDCPA.

42.     Pursuant to 15 USC 1692e(10), the use of any false representation or deceptive means to collect or attempt to collect any debt is a violation of the FDCPA.

43.     Pursuant to 15 USC 1692f(6), taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest is a violation of the FDCPA.

44.     On or about July 30, 2009, June 15, 2010, and at various times throughout 2009, ASC and K & M, contacted each Plaintiff by correspondence sent through the United States Postal Service.

45.     Each communication contained false, deceptive, and misleading information, indicating or implying that: (1) ASC and/or Deutsche Bank was the current holder of the Note, (2) that nonpayment of the debt would result in a Trustee foreclosure sale of Plaintiffs' property, (3) that K & M was foreclosing on the Note, which would result in the sale of Plaintiffs' property and, (4) that Plaintiffs owed attorney's fees, collection costs, and other charges to K & M.

46.     Each such communication identified above was sent for the purpose of attempting to collect a debt, misrepresented the character and legal status of such alleged debt, represented or implied that the nonpayment of the debt would result in the seizure or attachment or sale of the Property, threatened to take action that could not legally be taken, and threatened to take nonjudicial action to effect disposition or disablement of the Property when there was no present right to possession of the Property.

47.     ASC and K & M were without any authority to conduct a Trustee foreclosure sale, as the Assignment and Appointment were invalid, ASC was not the lender nor holder, in due

course or otherwise, of the Note, and Deutsche Bank was not the lender nor holder, in due course or otherwise, of the Note.

48.    K & M knew, or should have known, that neither ASC nor Deutsche Bank were the lender nor holder, in due course or otherwise, of the Note, and that Wells Fargo and/or Deutsche Bank had no authority to appoint it as successor Trustee.

49.    Furthermore, the purported trustee foreclosure sale and filing of Trustee's Deed was a nonjudicial action to effect dispossession or disablement of the Property from Plaintiffs when there was no present right to possession of the Property.

50.    Pursuant to 15 USC 1692k, defendants are liable to Plaintiffs for their actual damages, plus additional damages as the court may allow, not to exceed $1,000, for each violation of the FDCPA.

51.    Plaintiffs have been damaged by the reporting of the false foreclosure on their credit report, their inability to seek future credit based upon the reported foreclosure, embarrassment, damage to their character and good will, and expenditure of attorney's and other expert fees to defend and set aside the collection attempts and wrongful foreclosure.

52.    In addition, plaintiffs are entitled to reimbursement for the cost of this action, as well as their reasonable attorney's fees as determined by the court.

53.    Plaintiffs demand a trial by jury on all matters so triable.

WHEREFORE, Plaintiffs pray this court enter an order in their favor and against Defendants ASC and K & M on Count Three of their Petition for violations of the FDCPA and award Plaintiffs their actual damages in a fair and reasonable amount, together with statutory damages in the amount of $1,000 per violation, as well as Plaintiffs' costs of court and attorney's fees, and for such other and further relief as this court deems just and equitable.

Respectfully submitted,

Jennifer A. Coke

Jennifer A. Coke, #49407
PO Box 771009
St. Louis, MO 63177
(314) 226-9137
(866) 838-0920 Fax
jenniferacoke@thecokelawfirm.com
Attorney for Plaintiff

2
S-2
L-1

PLAINTIFF'S EXHIBIT 1

2006101100087434 W D
Bk:DE4598 Pg:1236
10/11/2006 12:52:32PM 1/2
CERTIFIED-FILED FOR RECORD
Barbara J. Hall
Recorder of Deeds
St. Charles County, MO
BY: Michelle Kimble

***GRT #2309***

## *GENERAL WARRANTY DEED (CORPORATION)*

*THIS DEED, Made and entered into this 31st day of January, 2006, by and between*

***TR Hughes, Inc.***

*a corporation, organized and existing under the laws of the State of Missouri with its principal office in the County of St. Charles, State of Missouri, Grantor, and*

***James E. Staley and Cheryl L. Staley, husband and wife***

*Address: 33 Maple Creek Court, Wentzville, MO. 63385*
*of the County of St. Charles, State of Missouri, Grantee.*

*WITNESSETH, that the said Grantor, for and in consideration of the sum of One Dollar and other valuable considerations, paid by the said Grantee, the receipt of which is hereby acknowledged, does or do by these presents GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM unto the said Grantee, the following described Real Estate, situated in the County of St. Charles, State of Missouri, to-wit:*
***Lot 49 of Boulder Ridge Plat Two, as per plat thereof recorded in Plat Book 41 Page 153 of the St. Charles County Records.***

***Risk Rate: 560.40***

*Subject to building lines, easements, conditions, and restrictions of record, if any.*

*TO HAVE AND TO HOLD the same, together with all rights and appurtenances to the same belonging, unto the said Grantee, and to the heirs and assigns of such Grantee forever.*

*The said Grantor hereby covenanting that said Grantor and the heirs, executors, administrators and assigns of such Grantor shall and will WARRANT AND DEFEND the title to the premises unto the said Grantee, and to the heirs and assigns of such Grantee forever, against the lawful claims of all persons whomsoever, excepting, however, the general taxes for the calendar year 2006 and thereafter, and special taxes becoming a lien after the date of this deed.*

(2)

20061011000874340 2/2
Bk:DE4598 Pg:1237

*IN WITNESS WHEREOF, the said Grantor has caused these presents to be signed by its Vice President of Residential Production and its corporate seal to be hereunto affixed.*

**Corp: TR Hughes, Inc.**

**BY:**______________________________
**Michael J. Boehmer, Vice- President of Residential Production**

---

**State of Missouri }**
**County of St. Charles } ss.**

*On this 9th day of October 2006, before me personally appeared* ***Michael J. Boehmer*** *who, being by me duly sworn, did say that he/she is the* ***Vice-President of Residential Production*** *of* ***TR Hughes, Inc.***, *a corporation of the State of Missouri, and that the seal affixed to the foregoing instrument is the corporate seal of said corporation; and that said instrument was signed and sealed in behalf of said corporation, by authority of its Board of Directors; and said* ***Vice-President of Residential Production,*** *acknowledged said instrument to be the free act and deed of said corporation.*

*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed by official seal in the County and State aforesaid, the day and year first above written.*

______________________________
*Notary Public*

NOTARY PUBLIC NOTARY SEAL STATE OF MISSOURI

KATHY MURPHY
My Commission Expires
November 2, 2009
St. Charles County
Commission #05400518

PLAINTIFF'S EXHIBIT 2

# NOTE

JANUARY 31, 2006 [Date] ST CHARLES [City], MISSOURI [State]

33 MAPLE CREEK, WENTZVILLE, MISSOURI 63385 [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $599,686.64 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Intervale Mortgage Corporation. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.42%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 2ND day of each month beginning on MARCH 2, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 2, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 815 Reservoir Avenue, Cranston, Rhode Island 02910 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3,898.19.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

07/14/2010 10:05 FAX 8148818755 KOZENY_&_MCCUBBIN 018/020

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[signature] (Seal)
JAMES E. STALEY -Borrower

[signature] (Seal)
CHERYL L. STALEY -Borrower

_______________________ (Seal)
-Borrower

[Sign Original Only]

PAY TO THE ORDER OF
[illegible]
WITHOUT RECOURSE
[illegible]
[signature]
Kasie Cureton
Asst. Secretary

[COMPANY SEAL]

Without Recourse
For valuable consideration
Decision One Mortgage Company, LLC
Assigns all rights, title and interest to
[illegible]
Decision One Mortgage Company, LLC
[signature]
Kasie Cureton
Asst. Secretary

[COMPANY SEAL]



# PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 31ST day of JANUARY, 2006, and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the "Borrower") in favor of Intervale Mortgage Corporation (the "Lender").

4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a partial prepayment without paying any prepayment charge. If I make a full prepayment within one (1) year of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan; If I make a full prepayment more than one (1) year but within two (2) years of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan; If I make a full prepayment more than two (2) years but within three (3) years of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_______________ (Seal)
JAMES E. STALEY -Borrower

_______________ (Seal)
CHERYL L. STALEY -Borrower

_______________ (Seal)
-Borrower

MISSOURI PREPAYMENT RIDER - FIXED RATE, FIRST MORTGAGE

PLAINTIFF'S EXHIBIT 3

16
5-15
L-16

20061011000074250 D T
Bk:DE4598 Pg:1238
10/11/2006 12:52:33PM 1/15

CERTIFIED-FILED FOR RECORD
Barbara J. Hall
Recorder of Deeds
St. Charles County, MO
BY: Michelle Kimble

# DEED OF TRUST

GRT#2309

DOCUMENT DATE: JANUARY 31, 2006

GRANTOR(S): JAMES H. STALEY AND CHERYL L. STALEY, HUSBAND AND WIFE

GRANTEE(S): Intervale Mortgage Corporation

GRANTEE'S ADDRESS: 815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910

TRUSTEE: JAMES H. McLARNEY

LEGAL DESCRIPTION: SEE ATTACHED SCHEDULE "A"

RECORD AS IS

3



[Space Above This Line For Recording Data]

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 31, 2006, together with all Riders to this document.

(B) "Borrower" is JAMES E. STALEY AND CHERYL L. STALEY, HUSBAND AND WIFE. Borrower is the trustor under this Security Instrument.

(C) "Lender" is Intervale Mortgage Corporation. Lender is a CORPORATION organized and existing under the laws of RHODE ISLAND. Lender's address is 815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910.

(D) "Trustee" is JAMES H. McLARNEY.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated JANUARY 31, 2006. The Note states that Borrower owes Lender FIVE HUNDRED NINE THOUSAND SIX HUNDRED EIGHTY-SIX AND 64/100ths Dollars (U.S.$509,686.64) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2036.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

JS CS

RECORD AS IS

20061011000874350 3/16
Bk:DE4598 Pg:1240

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider ☐ Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the County of ST. CHARLES:
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

RECORD AS IS

20081011000074350 4/15
Bk:DE4598 Pg:1241

SEE ATTACHED SCHEDULE "A"

which currently has the address of 33 MAPLE CREEK [Street]
WENTZVILLE [City], Missouri 63385 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CS

RECORD AS IS



Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

RECORD AS IS

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

RECORD AS IS



20081011000874360 7/16
Bk: DE4598 Pg: 1244

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

RECORD AS IS

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by



BK:DE4598 Pg:1246

Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

RECORD AS IS



In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's

RECORD AS IS


rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

GC CS

RECORD AS IS


Bk:DE4598 Pg:1249

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

RECORD AS IS



Bk:DE4598 Pg:1250

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

CS

RECORD AS IS

20081011000874350 14/15
Bk:DE4598 Pg:1251

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

26. **Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

27. **Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

CS

RECORD AS IS



200810110008674359 15/16
Bk:DE4598 Pg:1252

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ _______________________(Seal)
JAMES E. STALEY Borrower

_______________________ _______________________(Seal)
CHERYL L. STALEY Borrower

_______________________ _______________________(Seal)

State of MISSOURI, County of St Charles ,ss

On this 9th day of October 2006, before me personally appeared JAMES E. STALEY AND CHERYL L. STALEY, HUSBAND AND WIFE, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

(Seal) _______________________
Notary Public

My commission expires:

_______________________

NOTARY PUBLIC NOTARY SEAL STATE OF MISSOURI

KATHY MURPHY
My Commission Expires
November 2, 2009
St. Charles County
Commission #05400518

After Recording Return to:

Decision One Mortgage Company, LLC
Servicing Agent for Intervale Mortgage Corporation
6060 J.A. Jones Drive, Suite 800
Charlotte, North Carolina 28287

MISSOURI-Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3026 1/01 (page 14 of 14 pages)



## Exhibit A

Lot 49 of Boulder Ridge Plat Two, as per plat thereof recorded in Plat Book 41 Page 153 of the St. Charles County Records..

07/14/2010 10:05 FAX 3149918755 KOZENY_&_MCCUBBIN 017/020

05/17/2010 MON 15:51 FAX 014/027

PLAINTIFF'S EXHIBIT 4

20100430000257100 ASGMT
Bk:DE5376 Pg:662
04/30/2010 08:55:22 AM 1/2
CERTIFIED-FILED FOR RECORD
Barbara J. Hall
Recorder of Deeds
St. Charles County, Missouri
BY:JJAMES

*(Space Above reserved for Recorder of Deeds certification)*

**TITLE OF DOCUMENT:** Assignment of Deed of Trust

**DATE OF DOCUMENT:** 4/29/2010

**GRANTOR(S):** Mortgage Electronic Registration Systems, Inc. as a nominee for Intervale Mortgage Corporation

**GRANTOR(S) ADDRESS:** P.O. Box 2026, Flint, MI 48501

**GRANTEE(S):** Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4

**GRANTEE(S) ADDRESS:** 3476 Stateview Blvd., Fort Mill, South Carolina 29715

**REFERENCE BOOK AND PAGE(S):** Book DE4598 Page 1238

**LEGAL DESCRIPTION:**

LOT 49 OF BOULDER RIDGE PLAT TWO, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGE 153 OF THE ST. CHARLES COUNTY RECORDS.

Our file # STACHAS2



20100430000257100 2/2
Bk:DE5376 Pg:663

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, comes now for Mortgage Electronic Registration Systems, Inc. as a nominee for Intervale Mortgage Corporation(herein "Assignor"), whose address is: P.O. Box 2026, Flint, MI 48501, its successors and assigns, on behalf of and with authority of Intervale Mortgage Corporation and **hereby assigns and transfers to , Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4** (herein "Assignee"); whose address is: 3476 Stateview Blvd., Fort Mill, SC 29715 , its successors and assigns, all its right, title and interest in and to a certain Mortgage executed by James E. Staley and Cheryl L. Staley, husband and wife, and given to secure payment of $509,686.64 which Deed of Trust is of record in Book DE4598 at Page 1238 of the land records of St. Charles County, State of MO, encumbering the following legal description, to-wit:
**LOT 49 OF BOULDER RIDGE PLAT TWO, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGE 153 OF THE ST. CHARLES COUNTY RECORDS.**

Signed on the 29 day of April, 2010.

**Mortgage Electronic Registration Systems, Inc.**

[signature]
By: Sara Knittel
Its: Assistant Secretary

State of Missouri )
)ss
County of St. Louis )

I, the undersigned Notary Public in and for said county and state, hereby certify that Sara Knittel, whose name appears as Assist. Sec. of **Mortgage Electronic Registration Systems, Inc.**, signed the foregoing instrument and who is known to me, acknowledged before me on this date having been informed of the content of said conveyance, that as such, and with full authority executed and delivered the same voluntarily for and as the act of said corporation.
GIVEN UNDER MY HAND THIS DATE 4/29/2010

[signature]
Notary Public
My Commission Expires:
K&M Filename: STACHAS2

JENNIFER R. WAMSGANZ
Notary Public, Notary Seal
State of Missouri
St. Charles County
Commission # 10869746
My Commission Expires April 12, 2014

PLAINTIFF'S EXHIBIT 5

20090716000578280 SUCTR
Bk:DE5232 Pg:135
07/16/2009 10:28:40 AM 1/3
CERTIFIED-FILED FOR RECORD
Barbara J. Hall
Recorder of Deeds
St. Charles County, Missouri
BY:GBEQUETTE

*(Space Above reserved for Recorder of Deeds certification)*

Recording Requested by/Return to: KOZENY & McCUBBIN, L.C, 12400 Olive, Ste 555, Creve Coeur, MO 63141

**TITLE OF DOCUMENT:** Appointment of Successor Trustee

**DATE OF DOCUMENT:** 07/09/2009

**GRANTOR(S):** Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4

**GRANTOR(S) ADDRESS:** 3476 STATE VIEW BLVD., FORT MILL, SC 29715

**GRANTEE(S):** KOZENY & McCUBBIN, L.C

**GRANTEE(S) ADDRESS:** 12400 Olive Blvd., Suite 555, St. Louis, MO 63141

**REFERENCE:** Book DE4598 Page 1238

**LEGAL DESCRIPTION:**
LOT 49 OF BOULDER RIDGE PLAT TWO, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGE 153 OF THE ST. CHARLES COUNTY RECORDS.

K&M File Name: STACHAS2



20090716000578280 2/3
Bk:DE5232 Pg:136

**Appointment of Successor Trustee**

WHEREAS, Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4 as Trustee is the lawful holder of the promissory note in the amount of $509,686.64 secured by the deed of trust granted by James E. Staley and Cheryl L. Staley, husband and wife to Mortgage Electronic Registration Systems, Inc. as a nominee for Intervale Mortgage Corporation, which was dated 01/31/2006 and recorded in the records of St. Charles County, Missouri, the property being legally described commencing on the cover page of this instrument and commonly known as: 33 MAPLE CREEK, WENTZVILLE, MO 63385;

WHEREAS, the Deed of Trust provides that the lender shall have the power to remove the original trustee or any successor trustee and appoint in writing (acknowledged and recorded) a successor trustee, who shall succeed to the title and all of the rights and powers of the Original Trustee; and

WHEREAS, the undersigned is the owner and holder of the note described and secured by the Deed of Trust, and the payee of such debt;

NOW THEREFORE, BE IT KNOWN that the said holder, through the undersigned, its duly authorized officer, removes the Original Trustee and any other duly appointed Successor Trustee under the above-referenced Deed of Trust and hereby appoints Kozeny & McCubbin, L.C., 12400 Olive Blvd., Suite 555, St. Louis, MO 63141 as Successor Trustee under said deed of trust, with full power and authority to execute said trust as fully as if he were the named trustee therein.

IN WITNESS THEREOF, the undersigned has set his/her hand hereto this __9th__ day of July 2009.

STACHAS2

*KM4573950KM*

20090716000578280 3/3
Bk:DE5232 Pg:137

Wells Fargo Bank, NA as it attorney in fact for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4

By: Xee Moua

Its: Vice President of Loan Documentation

State of South Carolina )
)ss
County of York )

On this 9th day of July 2009, before me appeared Xee Moua to me personally known, who, being by me duly sworn did say that he/she is the Vice President of Loan Documentation for Wells Fargo Bank, NA as it attorney in fact for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4 , and that this instrument was signed on behalf of said corporation by authority of its board of directors, and said he acknowledges said instrument to be the free act and deed of said corporation

NOTARY PUBLIC

My Commission Expires:

AMANDA ELIZABETH HOSENFELD
Notary Public, South Carolina
My Commission Expires
April 27, 2017

*KM4573950KM*